UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| PLANTE & MORAN, PLLC, ) | |
| ) | |
|     Plaintiff-Counter-Defendant, ) | Case No. 1:16-cv-00590-SJD |
| v. ) | |
| ) | Judge Dlott |
| STUDENT TRANSPORTATION OF ) | |
| AMERICA, INC., d/b/a STUDENT ) | Magistrate Bowman |
| TRANSPORTATION, INC. ) | |
| ) | |
|     Defendant-Counter-Plaintiff. ) | |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

Now comes Defendant-Counter-Plaintiff, Student Transportation of America, Inc. ("STA") and for its Answer to the Amended Complaint filed by Plaintiff-Counter-Defendant, Plante & Moran, PLLC ("PM"), states as follows:

1.  This is an action by Plante Moran for breach of contract and related theories of recovery against Student Transportation arising from an agreement for Plante Moran to provide certain services to Student Transportation. The parties entered into a written agreement for tax provision services and income tax return preparation. Plante Moran performed pursuant to the agreement but Student Transportation failed to perform its obligations under the agreement, refused to pay for the services rendered and ultimately terminated the agreement. Plante Moran therefore seeks a monetary judgment against Student Transportation for the balance due under the agreement.

**ANSWER:** STA admits PM has asserted various claims against it in the Complaint. STA admits that it signed the agreement attached to the Complaint as Exhibit 1, but denies any attempt by PM to characterize the terms of that agreement. STA denies the allegations of the third sentence of paragraph 1. STA admits that PM seeks monetary damages, but denies PM is entitled to any damages whatsoever. STA denies all remaining allegations of paragraph 1.

## THE PARTIES

2. Plaintiff Plante Moran is a limited liability company organized and existing under the laws of the State of Michigan with a principal place of business at 26300 Northwestern Highway, Suite 120, Southfield, Michigan 48076.  The sole member of Plante Moran is P & M Holding Group, LLP, a limited liability partnership organized and existing under the laws of the State of Delaware.  P & M Holding Group, LLP, has 270 partners, all of whom are individuals who are domiciled in and, therefore, are citizens of the following States: Michigan (184), Illinois (50), Ohio (35) and Nevada (1).  No members of Plante Moran or partners of P & M Holding Group, LLP, are citizens of the State of New Jersey.

**ANSWER:** STA lacks knowledge as to the allegations of paragraph 2 and, therefore, denies same.

3. Defendant Student Transportation of America, Inc. is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 3349 Route 138, Building B, Suite D, Wall, New Jersey 07719.  Student Transportation is a citizen of the State of New Jersey.

**ANSWER:** STA denies the allegations of paragraph 3.

## JURISDICTION AND VENUE

4. This court has jurisdiction over this controversy pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between Plaintiff and Defendant and the amount in controversy exceeds Seventy-five Thousand Dollars ($75,000.00), exclusive of interest and costs.

**ANSWER:** Paragraph 4 calls for a legal conclusion to which no response is necessary.  To the extent the court requires a response to paragraph 4, STA denies same.

5. Venue properly lies in this Court pursuant to 28 U.S.C. §1391 because Plante Moran is a resident of this judicial district, the contract at issue was formed in this judicial district, and substantially all of the events or omissions giving rise to the claim occurred within this judicial district.

**ANSWER:** STA denies the allegations of paragraph 5.

## INTRODUCTION

6. Plante Moran is a regional certified public accounting and business advisory firm with offices throughout the Midwest including an office in Cincinnati, Ohio.

**ANSWER:** STA admits the allegations of paragraph 6.

7. Student Transportation is engaged as a school transportation provider serving school systems throughout the United States and in Canada.

**ANSWER:** STA admits the allegations of paragraph 7.

8. During the first half of 2015, Student Transportation initiated contact with Plante Moran regarding the engagement of Plante Moran to provide certain accounting and tax services for Student Transportation.

**ANSWER:** STA denies the allegations of paragraph 8.

9. After negotiations regarding the services to be provided, on April 24, 2013, the parties entered into a written agreement in the form of an Engagement Letter which incorporated a Professional Service Agreement (collectively, "Agreement"). A copy of the Agreement is attached hereto as Exhibit 1.

**ANSWER:** STA admits that the parties entered into the agreement attached to the Complaint as Exhibit 1. That agreement speaks for itself and STA denies any attempt by PM to characterize the terms of the agreement. STA denies the remaining allegations of paragraph 9.

10. The Agreement required Plante Moran to provide certain services to Student Transportation for fiscal years ending in 2013 and 2014, including preparation and review of U.S. and Canadian income tax returns and tax provision services. Under the Agreement, Student Transportation expressly agreed to provide Plante Moran financial statements and other tax information required by Plante Moran in order to provide services under the Agreement.

**ANSWER:** STA admits that the parties entered into the agreement attached to the Complaint as Exhibit 1. That agreement speaks for itself and STA denies any attempt by PM to characterize the terms of the agreement. STA denies the remaining allegations of paragraph 10.

COUNT I
**Breach of Contract**

11. Plante Moran incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:** STA hereby incorporates its answers to paragraphs 1 through 10.

12. After entering into the Agreement, Plante Moran began to perform the services called for under the Agreement.

**ANSWER:** STA denies the allegations in paragraph 12.

13. Plante Moran experienced difficulties in performing the Agreement due to the failure of Student Transportation to provide certain financial and tax information required by Plante Moran.

**ANSWER:** STA denies the allegations in paragraph 13.

14. Plante Moran substantially performed its obligations under the Agreement.

**ANSWER:** STA denies the allegations in paragraph 14.

15. Student Transportation refused to pay the balance due under the Agreement and in 2014 terminated the Agreement.

**ANSWER:** STA admits that it terminated the Agreement and has refused to pay PM because, among other things, PM has materially breached the agreement as set forth in STA's Counterclaim.

16. Student Transportation has breached the Agreement.

**ANSWER:** STA denies the allegations in paragraph 16.

17. Student Transportation's breach of contract has proximately caused Plante Moran to suffer damages in an amount not less than Two Hundred Five Thousand Three Hundred Twenty-four and 61/100 Dollars ($205,324.61).

**ANSWER:** STA denies the allegations in paragraph 17.

COUNT II
**Action on Account**

18. Plante Moran incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:** STA hereby incorporates its answers to paragraphs 1 through 17.

19. Student Transportation engaged the services of Plante Moran under which Plante Moran routinely provided Student Transportation with statements for the amounts charged for the services provided to Student Transportation.

**ANSWER:** STA denies the allegations in paragraph 19.

20. True and accurate statements of the account for services provided by Plante Moran to Student Transportation are attached hereto as Exhibit 2.

**ANSWER:** STA admits that it received certain statements for work allegedly completed by PM but denies that it owes any of the amounts set forth in the statements. STA denies the remaining allegations of paragraph 20.

21. Because of Student Transportation's failure to pay on the account, the balance in an amount not less than $199,612.97 remains due and payable by Student Transportation to Plant Moran.

**ANSWER:** STA denies the allegations in paragraph 21.

22. Based on the account, Student Transportation is liable to Plante Moran in an amount not less than Two Hundred Five Thousand Three Hundred Twenty-four and 61/100 Dollars ($205,324.61).

**ANSWER:** STA denies the allegations in paragraph 22.

COUNT III
**Promissory Estoppel**

23. Plante Moran incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:** STA hereby incorporates its answers to paragraphs 1 through 22.

24. Student Transportation promised Plante Moran that it would pay for all services provided to Student Services under the Agreement.

**ANSWER:** STA denies the allegations in paragraph 24.

25. Student Transportation would have reasonably expected Plante Moran to rely on its promise under the Agreement and Plante Moran did rely on that promise in providing services to Student Transportation.

**ANSWER:** STA denies the allegations in paragraph 25.

26. Student Transportation failed to pay Plante Moran as promised thus causing Plante Moran to suffer damages in the principal amount in excess of Two Hundred Five Thousand and 00/100 Dollars ($205,000.00).

**ANSWER:** STA denies the allegations in paragraph 26.

27. Enforcement of Student Transportation's promise is necessary to avoid injustice.

**ANSWER:** STA denies the allegations in paragraph 27.

## COUNT IV
## Unjust Enrichment

28. Plante Moran incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

**ANSWER:** STA hereby incorporates its answers to paragraphs 1 through 27.

29. Plante Moran provided services to Student Transportation with a reasonable value in excess of Two Hundred Five Thousand and 00/100 Dollars ($205,000.00).

**ANSWER:** STA denies the allegations in paragraph 29.

30. Student Transportation knew about and accepted the services provided to it and benefited from its receipt of those services.

**ANSWER:** STA denies the allegations in paragraph 30.

31. It would be unjust and/or inequitable to permit Student Transportation to retain the benefit of the services provided without paying Plante Moran the amount owed which is in excess of Two Hundred Five Thousand and 00/100 Dollars ($205,000.00).

**ANSWER:** STA denies the allegations in paragraph 31.

## AFFIRMATIVE DEFENSES

Defendant-Counter-Plaintiff Student Transportation, Inc. for its Affirmative Defenses states as follows:

### Affirmative Defense No. 1 - Failure to State a Claim

PM's Amended Complaint fails to state a claim upon which relief can be granted because, among other things, Counts III and IV allege the existence of an express written agreement, which serves as a bar to the claims sought in those counts.

### Affirmative Defense No. 2 – Setoff

STA is entitled to a setoff of at least $200,000 for damages it incurred as a result of PM's breach of its professional duties.  STA hereby incorporates paragraphs 1-45 of its Counterclaim as though set forth herein verbatim.

### Affirmative Defense No. 3 – Material Breach

PM materially breached its agreement with STA as set forth in paragraph 38 of its Counterclaim, which is incorporated herein by this reference.  STA also hereby incorporates paragraphs 1-45 of its Counterclaim as though set forth herein verbatim.

### Affirmative Defense No. 4 – Unclean Hands

PM has unclean hands in that it breached its professional duties to STA and, therefore, is not entitled to equitable relief.

For relief, for all of the foregoing reasons, Defendant-Counter-Plaintiff, Student Transportation, Inc. respectfully requests that this Court enter an order dismissing Plante & Moran, PLLC's Amended Complaint and granting such further relief deemed equitable and just.

### DEFENDANT'S COUNTERCLAIM

Defendant-Counter-Plaintiff, Student Transportation of America, Inc., for its Counterclaim against Plaintiff-Counter-Defendant, Plante & Moran, PLLC, states as follows:

### NATURE OF ACTION AND RELIEF REQUESTED

1. Counter-Plaintiff retained Counter-Defendant accounting firm to provide various tax services, including preparation of corporate tax returns in the United States and Canada. Counter-Defendant failed to perform much of the required work and the work it did provided was defective and incorrect.

2. As a result, Counter-Plaintiff was forced to hire a replacement accountant and also incur unnecessary audit fees and suffer other damages. Counter-Plaintiff files the present action for breach of contract and accountant malpractice seeking to recover such damages as well as pre-judgment interest, attorneys' fees and costs.

## BACKGROUND

### The Parties

3. Counter-Plaintiff Student Transportation of America, Inc. ("STA" or "Counter-Plaintiff") is incorporated under the laws of Delaware and maintains its principal office at 3349 Highway 138, Building A, Suite C, Wall, Monmouth County, New Jersey.

4. STA is North America's largest independent provider of school bus transportation services, operating more than 13,000 vehicles in over 275 school districts in the United states and Canada. STA is publicly traded on the Toronto Stock Exchange in Canada and on the NASDAQ in the United States.

5. Counter-Defendant, Plante & Moran, PLLC ("PM" or Counter-Defendant") is a Michigan limited liability company with its principal office located at 26300 Northwest highway, Suite 120, Southfield, Michigan.

6. PM is one the largest certified public accounting and business advisory firms in the United States.

### Jurisdiction and Venue

7. This Court has jurisdiction over the Counter-Defendant and this action pursuant to 28 U.S.C. § 1367 because the claims asserted herein are so related to the claims asserted in PM's Amended Complaint that they form part of the same case or controversy.

**Student Transportation Engages PM to Perform Tax Services**

8. On or about April 23, 2013, STA and PM entered into a Tax Services Agreement (the "Agreement"), which consisted of an engagement letter and professional services agreement, whereby PM agreed to perform the following services (and others) in exchange for certain payments from STA:

- Tax provision work, supporting schedules, and footnote preparation for the fiscal year ended June 30, 2013 (including interim periods 9/30/13, 12/31/13 and 3/31/14) for which the contract amount was $30,000;

- Preparation and review of U.S. Income Tax Returns for the fiscal year ended June 30, 2013 and related setup of quarterly tax estimates, for which the contract amount was $105,000; and

- Preparation of Canadian Income Tax Returns for the fiscal year ended June 30, 2013, for which the contract amount was $23,000.

A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

9. The Agreement was terminable upon written notice by either party. See Ex. A.

**PM Provides Defective Tax Provision Work**

10. STA hired PM to improve and streamline the process for the preparation of tax returns generally (and tax provision work specifically).

11. To that end, PM promised to provide a high level of service, supervision and review in order to enable STA to provide a final tax provision to its auditors on a timely basis in connection with STA's year-end audit and quarterly review work. As STA repeatedly advised PM, its goal was to save fees incurred by the auditors on year-end audits by getting them accurate final tax provision information as early as possible.

12. Further, STA expected PM to properly and correctly prepare tax provisions in order to limit the number of versions of the tax provision prepared and reviewed by STA and its outside auditor, so as to limit or eliminate audit fee overruns relating to the auditor's review of

tax revisions. As STA repeatedly advised PM, in the past STA had incurred significant fees due to auditors having to review multiple tax provisions.

13. Unfortunately, PM repeatedly prepared and submitted tax provisions to STA that were grossly inaccurate.

14. For example, the initial year-end tax provision PM provided to STA reflected an approximate *75 percent effective tax rate*, which was patently and obviously far too high. When STA notified PM, PM delivered a second year-end tax provision that reflected an approximate *15 percent effective tax rate*, which was obviously far too low. The blatant errors in these provisions should have been clear to PM before they sent them to STA.

15. Ultimately, PM delivered **nine (9) separate versions** of the year-end tax provision for review by STA and its auditors as part of the audit process. This was highly disruptive and led STA to incur significant internal review time and audit overrun fees.

16. PM also delivered a first quarter tax provision that was also incorrect. The tax provision provided failed to include several Canadian STA subsidiaries.

17. Based on the tight timing of the receipt of the first quarter tax provision, STA had to correct the PM-prepared provision itself, effectively re-doing the work it had retained PM to complete. STA notified PM of this via an email on November 4, 2013.

18. The corrections required changed the effective tax rate for the first quarter *by approximately five (5) percent*.

19. Even more troubling, in both of the foregoing examples, the actual work product provided by PM for the year-end tax provision and the first quarter interim tax provision used the exact same template, along with supporting schedules, which was actually provided to PM by STA, that had been utilized by the STA historically.

20. Further, the majority of the work PM performed in connection with the tax provision was performed by one individual, with no apparent support or supervision from a partner at PM.

21. PM's work resulted in timing delays and ultimately cost over-runs associated with STA's audit, costs which STA would not otherwise have had to bear.

**PM Fails to Provide Tax Return Preparation Work Prior to Termination of the Agreement**

22. On September 12, 2013, PM filed requests to extend the filing deadline for STA's United States tax returns, extending the filing due date of those returns to March 15, 2014.

23. PM did not begin substantive work on STA's United States tax returns prior to STA's termination of the Agreement on November 19, 2013.

24. In fact, on November 19, 2013, PM advised STA that it needed to "review the trial balance in detail in this first year to gain a better understanding of the specific accounts". Based on this inquiry, it is clear that PM had not begun substantive work on STA's June 30, 2013 tax returns.

25. Nor had PM completed substantial work on STA's Canadian tax returns prior to termination. On November 19, 2013, PM noted that its Canadian affiliate (MNP) had reviewed STA's prior year returns and had developed a list of questions. A true and correct copy of PM's e-mail of November 19, 2013 is attached hereto as **Exhibit B**.

26. Based on this status report, it is clear that PM had not yet commenced preparation of STA's current year Canadian income tax returns.

27. PM never provided STA with even a draft form of any tax returns or quarterly tax estimates for STA's review.

6427083.5

- 12 -

**STA Terminates the Agreement and PM Sends its Grossly Inflated Final Invoice**

28. On November 19, 2013, STA terminated the Agreement due to PM's poor performance regarding the tax provisioning work and general loss of confidence in PM.

29. On December 6, 2013 PM sent an invoice to STA seeking an additional $158,137.33 (STA had already paid $11,217.50 to date). A true and correct copy of PM's December 6th invoice is attached hereto as **Exhibit C**.

30. The invoice included almost $82,500 in fees associated with the tax provision work, representing ***274%*** of the contract price for tax provision services, and nearly $76,000 in fees for alleged preparation of US and Canadian tax return preparation <u>even though not a single tax return had been drafted and, from all indications, work on the returns had barely begun</u>.

31. Even a cursory review of the invoice (and the generally limited detail, large block time entries and entries by people that STA never worked with) suggests that many of the entries are spurious or inflated.

**STA hires a Replacement Accounting Firm**

32. After terminating PM, STA retained a replacement accounting firm to prepare the Canadian income tax returns, the U.S. income tax returns, and interim quarterly tax provisions – the work it had hired PM to provide under the Agreement.

33. STA also unnecessarily incurred additional audit fees due to the multiple incorrect versions of the year-end tax provision submitted by PM and reviewed by STA's auditors in connection with its year-end audit.

34. As alleged below, STA spent at least $200,000 in unnecessary costs after replacing PM.

## COUNT I
### (Breach of Contract)

35. STA incorporates and realleges by reference paragraphs 1 through 34 of Background as paragraph 35 of Count I.

36. The Agreement required PM to competently and efficiently render certain tax provision and tax return preparation services.

37. PM breached the Agreement by, among other things:

- Repeatedly providing incorrect tax provision work;

- By delivering tax provision worksheets to STA that had originally been provided to PM by STA and claiming that they constituted PM's work product;

- Failing to supervise accountants and other professionals providing accounting services to STA;

- Providing erroneous tax provisions requiring at least nine revisions;

- Failing to prepare United States and Canadian tax returns; and

- Issuing invoices and demanding payments not called for in the Agreement and which improperly seek payment for defective services and/or services that PM never actually rendered.

38. STA fully performed all of its obligations to PM under the Agreement.

39. As a result of PM's breaches of the Agreement, STA has suffered damages, including payment of unnecessary audit fees, payment of a replacement accountant, payment of fees to PM for defective services and costs related to work unnecessarily and unexpectedly performed by its internal accounting staff.

WHEREFORE, Defendant-Counter-Plaintiff, Student Transportation of America, Inc., requests that judgment be entered in its favor and against Plaintiff-Counter-Defendant, Plante &

6427083.5

- 14 -

Moran, PLLC, for damages in an amount to be proven at trial, plus costs and such other and further remedies as this Court deems proper.

## COUNT II
### (Accountant Malpractice)

40. STA incorporates and realleges by reference paragraphs 1 through 39 of Count I as paragraph 40 of Count II.

41. PM had a duty to exercise a reasonable degree of care and competence in the performance of professional services for STA.

42. In performing the acts herein alleged, PM the partners, agents, and employees of PM that performed services for STA, failed to use the ordinary, usual and reasonable standard of care exercised by members of the accounting profession in the State of New Jersey and negligently and carelessly breached their duties to STA by, among other things:

- Repeatedly providing incorrect tax provision work;

- By delivering tax provision worksheets to STA that had originally been provided to PM by STA and claiming that they constituted PM's work product;

- Failing to supervise accountants and other professionals providing accounting services to STA;

- Providing erroneous tax provisions requiring at least nine revisions;

- Failing to prepare United States and Canadian tax returns; and

- Issuing invoices and demanding payments not called for in the Agreement and which improperly seek payment for defective services and/or services that PM never actually rendered.

43. In performing the acts herein alleged PM failed to exercise the ordinary, usual and reasonable degree of supervision and control over its employee and, thereby negligently and carelessly failed to protect the interests of STA.

44. As a direct and proximate result of the conduct of PM, STA has suffered damages, including without limitation, payment of unnecessary audit fees, payment of a replacement accountant, payment of fees to PM for defective services and costs related to work unnecessarily and unexpectedly performed by its internal accounting staff.

WHEREFORE, Defendant-Counter-Plaintiff, Student Transportation of America, Inc., requests that judgment be entered in its favor and against Plaintiff-Counter-Defendant, Plante & Moran, PLLC, for damages in an amount to be proven at trial, plus costs and such other and further remedies as this Court deems proper.

Respectfully submitted,

/s/ Ryan P. Sherman
Ryan P. Sherman (0075081), Trial Attorney
Porter, Wright, Morris & Arthur LLP
41 S. High Street
Columbus, Ohio 43215
Telephone:  (614) 227-2000
Facsimile:  (614) 227-2100
E-mail:  rsherman@porterwright.com

Barry L. Fischer
James L. Oakley
Thompson Coburn LLP
55 East Monroe Street, 37th Floor
Chicago, IL 60603
Telephone:  (312) 346-7500
Facsimile:  (312) 580-2201
E-mail:  bfischer@thompsoncoburn.com
        joakley@thompsoncoburn.com

## CERTIFICATE OF SERVICE

    It is hereby certified that the foregoing has been filed via the electronic filing system on September 19, 2016. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the electronic filing system.

        /s/ Ryan P. Sherman
        Ryan P. Sherman